**Darwyn Gene KLARENBEEK, Appellant,**

v.

**IOWA DEPARTMENT OF TRANS-PORTATION, Motor Vehicle Division, Appellee.**

No. 95–1627.

Supreme Court of Iowa.

Nov. 20, 1996.

Randy C. Waagmeester of DeWaay & Waagmeester, Rock Rapids, for appellant.

Thomas J. Miller, Attorney General, David Ferree, Special Assistant Attorney General, and Kerry Anderson, Assistant Attorney General, for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

SNELL, Justice.

This is an appeal from the revocation of petitioner's driver's license for operating a motor vehicle while under the influence of alcohol, in violation of Iowa Code chapter 321J. The district court affirmed the decision of the reviewing officer of the Iowa Department of Transportation which revoked the license. We reverse and remand.

## I. Background Facts and Proceedings

In the early morning hours of February 19, 1995, Lyon County Deputy Sheriff Steven Michaels stopped a vehicle driven by appellant Darwyn Klarenbeek for crossing the center line. Deputy Michaels administered a preliminary breath test which indicated Klarenbeek had a blood-alcohol concentration in excess of .10. Klarenbeek was arrested for operating a motor vehicle while intoxicated, in violation of Iowa Code section 321J.2 (1995). Deputy Michaels then transported Klarenbeek to the Lyon County Sheriff's office to invoke implied consent.

At the time of the arrest, deputy Michaels had not completed training at the Iowa Law Enforcement Academy, although he had received some formal training at the Florida Law Enforcement Academy, the Polk County Sheriff's office, and field training with the Lyon County Sheriff's office. The record does not indicate whether any of this training involved handling drivers suspected of driving under the influence of alcohol.

When Klarenbeek arrived at the Lyon County Sheriff's office, deputy Michaels sought assistance in invoking implied consent because he was not certified to operate an intoxilyzer machine. Rock Rapids police officer Joseph McCarty, who was so qualified, assisted deputy Michaels. Officer McCarty invoked implied consent and Klarenbeek agreed to submit to a breath test which indicated a blood-alcohol concentration of .137. The results of the analysis were certified by officer McCarty to the Iowa Department of Transportation (IDOT) which revoked Klarenbeek's license.

Klarenbeek challenged the revocation in administrative proceedings before IDOT, claiming that deputy Michaels lacked the formal training necessary to administer a preliminary breath test and invoke implied consent. An administrative law judge entered a decision reversing the license revocation and determined deputy Michaels was not a peace officer under section 321J.1(7) and thus could not invoke implied consent. On appeal, IDOT reinstated the license revocation, finding that it was officer McCarty who invoked implied consent, and not deputy Michaels. There is no dispute that officer McCarty qualifies as a peace officer under section 321J.1(7).

Klarenbeek filed a petition for judicial review under section 17A.19 of the Code challenging the revocation, claiming that implied consent was improperly invoked by the arresting officer, deputy Michaels. On August 25, 1995, the district court entered a ruling affirming the agency's decision to revoke Klarenbeek's license. The court found that deputy Michaels had sufficient formal training to qualify as a peace officer within the meaning of chapter 321J.1. It is from this ruling that Klarenbeek appeals.

## II. Analysis

Our review standards are provided by Iowa Code section 17A.19(8), review of agency action.

We have recently filed *State v. Palmer*, 554 N.W.2d 859 (Iowa 1996), in which we extensively reviewed the history of the law embraced by chapter 321J as it pertained to driving a motor vehicle while intoxicated. Our decision in *Palmer* controls the result in the case now under consideration.

In *Palmer*, the defendant driver was arrested by a city police officer who had no formal training as a police officer through the

Iowa Law Enforcement Academy, nor did he have any formal college education in police science. After stopping the defendant's vehicle and talking to defendant, the officer required him to perform tests after which he arrested him for drunk driving. At the jail, the arresting officer told the deputy sheriff that he could not invoke implied consent because he was not certified by the Iowa Law Enforcement Academy. Without making an independent assessment of the defendant's intoxication, the deputy sheriff then read the implied consent form to the defendant. The defendant consented to testing and a subsequent breath test administered by a second deputy sheriff showed a .154 blood-alcohol concentration.

After analyzing the statutes, the words defined by the legislature, and the purpose of the law, we held that because the requirements of chapter 321J were not met, the results of the intoxilyzer test were properly suppressed. The arresting officer did not qualify as a "peace officer" as defined by Iowa Code section 321J.1(7). Arguments by the State were rejected that the statute is satisfied if the officer is a "de facto" peace officer. We also held that our rule of substantial compliance did not permit the admission of this evidence. We said:

> Douglass was not a qualified peace officer for purposes of the implied consent statute. Moreover, his lack of qualifications directly impacts attainment of the legislative goal to protect citizens from indiscriminate testing and harassment. To conclude that a peace officer administering the implied consent procedures can rely on the observations of one not qualified by statute clearly undermines the purpose behind the legislature's narrow definition of peace officer. Consequently, we hold that the deputy sheriff's reliance on Officer Douglass's arrest of Palmer did not constitute substantial compliance with section 321J.6.

*Palmer*, 554 N.W.2d at 867.

On the question of whether the statute was satisfied by the participation of the second officer, who was qualified, we said:

> The State [argues] that it can substantially comply with the statute in cases like Palmer's by merely having the second, qualified

officer rearrest the defendant. The State argues this technical compliance with the statute is a meaningless gesture. Such an action would certainly be meaningless if the only requirement was that the second officer speak the magical words, "I hereby rearrest you." We think, however, this mere formality would not result in substantial compliance with the statute.

What is lacking here is an arrest based on an objective and reliable assessment of intoxication made by one deemed competent under section 321J.1(7). Consequently, to substantially comply with section 321J.6 under the facts of this case, it would have been necessary for the deputy sheriff to have independently assessed, based on his personal observations or tests that he administered, whether there were reasonable grounds to believe the defendant was intoxicated.

The State also argues the deputy sheriff's invocation of the implied consent procedures resulted in a de facto rearrest of Palmer. It reasons the deputy possessed the same information as Douglass by virtue of the shared information rule and therefore, the deputy had probable cause to believe Palmer was operating a vehicle while intoxicated. We cannot accept this argument for the same reasons we have rejected the State's substantial compliance argument. Douglass was not qualified under chapter 321J to make an arrest that could provide the basis for invoking implied consent. That is because he lacked the training required by that chapter. Under these circumstances we will not allow the deputy to rely on Douglass's "knowledge" any more than we would allow the deputy to rely on Douglass's arrest.

*Id.* at 867 (footnote omitted).

In the case at bar, these same questions have been raised that were answered in *Palmer* as set out above.

### III. Testimony of Officer McCarty

The testimony of officer McCarty, who was qualified to invoke the implied consent law, was as follows:

Q. You did not place Mr. Klarenbeek under arrest in this case? A. Correct. I did not.

Q. Officer Michaels testified that he administered roadside sobriety tests at the sheriff's office. Is it correct that you did not administer those tests? A. No, I just watched off and on. I was doing some of the paperwork, I guess I don't remember if I watched the whole test or not. I don't know that part because I was filling in the information for the intoxilyzer and stuff like that.

Q. Is the reason that you administered the breath test in this case is because Officer Michaels is not a certified peace officer at this point in time? A. Correct.

Q. Mr. Klarenbeek did not refuse to take the test when you made the request to him? A. No.

Q. You were not present at the site of the traffic stop out south of Lester in this case? A. No, I wasn't.

Q. So you didn't observe Mr. Klarenbeek operate a motor vehicle at any time? A. No, I did not.

Q. You did not administer a PBT to Mr. Klarenbeek in this case? A. No, I didn't.

Q. Thank you. So you did not see the results of the PBT that was administered in the field in this case? A. No, I did not.

Q. Officer Michaels didn't show you the, the preliminary breath screening device and show you the printout or the digital reading on it? A. No, he did not.

█ The State argues that the principle of shared knowledge applies to this situation. This issue was also answered in *Palmer,* where we said:

Our conclusion in no way undermines the validity of our prior cases applying the rule of shared knowledge in other situations. *See, e.g., State v. Owens,* 418 N.W.2d 340, 342 (Iowa 1988); *State v. Schubert,* 346 N.W.2d 30, 32 (Iowa 1984); *State v. Thornton,* 300 N.W.2d 94, 97–98 (Iowa 1981). We merely hold the shared knowledge rule cannot be applied *for purposes of determining intoxication under the implied consent statute* when the arresting officer does not qualify as a peace officer. In this limited situation, application of the shared knowledge rule must be suspended to ensure the legislative purpose underlying the definition of "peace officer" is accomplished, namely that citizens will not be subjected to a warrantless search on the basis of unreliable assessments of intoxication made by untrained individuals.

*Id.* at 867–68 (footnote omitted).

The facts in the instant case bring it within the ambit of our holding in *Palmer.* There was not "an objective and reliable assessment of intoxication made by one deemed competent under 321J.1(7)" prior to administering the intoxilyzer test. *See Palmer,* 554 N.W.2d at 867. The results of the breath test should have been suppressed. The Department of Transportation's revocation of Klarenbeek's driver's license was based on an error of law since it was founded on this evidence. The case is therefore reversed and remanded for entry of judgment consistent with this decision.

**REVERSED AND REMANDED.**